(C. D. 1125)

### E. C. LINEIRO *v.* UNITED STATES

United States Customs Court, Third Division

(Decided August 4, 1948)

*Lawrence, Tuttle & Harper* (*George R. Tuttle, Walter I. Carpeneti*, and *Charles J. Evans* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Joseph E. Weil, Richard H. Welsh*, and *William J. Vitale*, special attorneys), for the defendant.

Before Cline, Ekwall, and Johnson, Judges

Cline, Judge: These are protests arising at the port of Nogales against the collector's assessment of duty on merchandise described in the invoices as rice byproduct feed, upon the rice-bran content at five-eighths of 1 cent per pound under paragraph 727 of the Tariff Act of 1930; upon the rice-hull content at 5 cents per 100 pounds under paragraph 730, as amended; and upon the broken-rice content at five-sixteenths of 1 cent per pound under paragraph 727, as amended. Various claims are made in the protests, but the one chiefly relied upon at the trial and in plaintiff's brief is that the merchandise is properly dutiable under paragraph 730, as amended, as a byproduct feed obtained in milling wheat or other cereals at 5 per centum ad valorem.

The pertinent provisions of the tariff act are as follows:

Par. 727. * * * rice meal, flour, polish, and bran, five-eighths of 1 cent per pound. .

Par. 727 [as amended by the trade agreement with the Netherlands, T. D. 48075]. Broken rice, which will pass readily through a metal sieve perforated with round holes five and one-half sixty-fourths of 1 inch in diameter, 5/16¢ per lb.

Par. 730 [as amended by the trade agreement with Canada, T. D. 49752]. Bran, shorts, by-product feeds obtained in milling wheat or other cereals, 5% ad val.

Par. 730 [as amended by the trade agreement with Canada, T. D. 49752]. Hulls of oats, barley, buckwheat, or other grains, ground or unground, 5¢ per 100 lbs.

At the trial plaintiff called Albert Lent, manager of the Arizona Flour Mills in Tucson, who testified that he had bought, imported, or used a mixture consisting of broken rice, rice hulls, and rice bran; that he was familiar with the importation herein; that it was used just as a bran or as a byproduct feed; that he did not determine the percentages of the component materials. He was asked to assume that the importations consisted of 80 per centum rice bran, 5 per centum rice hulls, and 15 per centum broken rice, and to state the use of such a material. He answered as follows:

We use it, around 10 per cent, in dairy rations, in poultry rations, in which it is mixed with ground grains, alfalfa meal, wheat bran, oil cake meals, and minerals and vitamin substances.

He stated further that byproduct feeds, such as rice bran or wheat bran, are used to add bulk to the rations.

Counsel for the plaintiff was permitted to read to the witness the following description of the process of production of merchandise such as is involved herein:

* * * The rice was first run through a cleaner, to separate the rice from wheat seeds, bits of rice stalk, and other extraneous matter. The rice was then run through a grader, to separate the light and small grains of rice from the rice to be milled. The rice was then run through a sheller, where the grains of rice are upended. This sheller consists of a stationary stone and a revolving stone. After-

46

wards the white rice was run through the huller, which knocks off the ends of the hulls, the rice and the hulls passing through a blower, which separates the majority of the hulls from the rice and the smaller grains of rice that were not cracked in going through the huller. The rice and a small percentage of hulls passed through the hullers, where the rice meal, bits of broken rice, and the balance of the hulls are removed from the rice; the rice then going to the polisher, where the polish is removed. The rice bran, bits of broken rice, and the balance of the hulls went into storage bins, where it was held.

The witness stated that he was familiar with that process and that he had seen it being carried out in this country; that he called the mixture obtained in the process rice byproduct feed because it is not pure bran. On cross-examination, Mr. Lent stated that rice bran, rice hulls, and broken rice are each byproduct feeds.

At a subsequent hearing, plaintiff moved in evidence descriptions appearing upon the invoices herein, which read as follows:

Byproduct feed composed of 3 rice byproducts obtained simultaneously in continuous milling of rice.

These words appear in red ink on the *pro forma* invoice in protest No. 104735-K and on the consular invoices in protest Nos. 104736-K and 104737-K. The notation on the invoice in protest No. 104737-K is signed by J. A. May, the appraiser; in the other protests, the notations are unsigned.

The Government offered in evidence the chemist's reports attached to each of the three entries. These reports give the composition of the imported merchandise as follows:

| Protest numbers | 104735-K | 104736-K | | 104737-K | |
|---|---|---|---|---|---|
| Car numbers | 21902 | 465016 | 54041 | 176566 | 28117 |
| Rice bran | 70% | 68% | 72% | 80% | |
| Rice hulls | 15% | 19% | 12% | 5% | |
| Rice (broken) | 15% | 13% | 16% | 15% | |

The issue herein is whether or not the merchandise is to be classified as a byproduct feed obtained in the milling of cereals under paragraph 730 of the Tariff Act of 1930. In *United States* v. *F. W. Myers & Co., Inc.*, 29 C. C. P. A. 34, C. A. D. 168, there was involved merchandise prepared by mixing together approximately 78 per centum of oat hulls and 22 per centum of "oat middlings and oat shorts," and grinding the mixture. There was evidence that in the process of production, oats and hulled oats passed from the hullers to a place where the oat middlings or Banner feed, consisting of oat middlings and oat shorts, were removed; that from there, the Banner feed went in one direction and the hulls and groats in another; that the hulls were removed from the groats; and the Banner feed and the hulls were then put together and ground, producing merchandise known as "Vim Oat Mill Feed." The court held that the merchandise was not dutiable as a byproduct feed obtained in the milling of cereals, stating that oat hulls and Banner feed were byproducts obtained in the milling of oats; that Banner feed

was probably covered by the provision for byproduct feeds in paragraph 730, but that oat hulls were provided for *eo nomine* in paragraph 730. The court pointed out that although paragraph 730 of the Tariff Act of 1922 provided for the first time for "by-product feeds obtained in milling wheat or other cereals," the legislative policy of classifying oat hulls as a separate tariff entity was maintained and that that policy was not changed when paragraph 730 of the Tariff Act of 1930 was enacted. The court stated further (p. 42):

> In view of the fact that the Congress has provided in paragraph 730, *supra*, for "by-product feeds obtained in milling wheat or other cereals" at one rate of duty and for "hulls of oats, * * * ground or unground," at another rate of duty, and as the involved merchandise is *not obtained in the milling of oats*; but, on the contrary, is prepared by mixing a *by-product feed* obtained in milling oats with another tariff entity—oat hulls—in the proportions hereinbefore stated and grinding the mixture, we are of opinion that the involved *"Vim Oat Mill Feed"* is not a *"by-product"* feed *"obtained in milling"* oats within the purview of paragraph 730, *supra*. [Italics quoted.]

In the instant case the three component parts of the merchandise are provided for *eo nomine* in paragraphs 727 and 730 of the Tariff Act of 1930. While such ingredients were apparently obtained simultaneously in a continuous milling operation rather than by a mixture of materials produced in separate operations as in the *Myers* case, *supra*, we are of opinion that the controlling factor is that the components are *eo nomine* provided for in the tariff act. As the testimony shows, each of the parts is in itself a byproduct feed obtained in the milling of rice, but, since each is specifically provided for in the tariff act, each is dutiable under such provision rather than under the general designation for byproduct feeds. As indicated in the *Myers* case, the provision for byproduct feeds in paragraph 730 did not change the legislative policy of classifying rice bran, rice hulls, and broken rice as separate tariff entities. There is no evidence that the merchandise herein is anything other than a physical mixture of those three entities.

In the *Myers* case, the merchandise had been ground after it had been commingled and the court stated that it should have been classified as an unenumerated manufactured article, although it did not so hold since no such claim had been made in the protest. In the instant case, the collector has classified the merchandise according to its component parts. It can be assumed, therefore, that the materials are readily segregable. It has long been held that milled rice and broken rice are segregable and that the respective portions are to be assessed with the appropriate rates of duty. *United States* v. *Seattle Brewing & Malting Co.,* 1 Ct. Cust. Appls. 362, T. D. 31454; *United States* v. *M. J. Brandenstein & Co.,* 17 C. C. P. A. 480, T. D. 43941; *Monroe D. Green* v. *United States,* 59 Treas. Dec. 1155, T. D.

44888; *Great Pacific Co., Monroe D. Green* v. *United States*, 65 Treas. Dec. 334, T. D. 46921; *United States* v. *Great Pacific Co., Shui Tai & Co.*, 23 C. C. P. A. 319, T. D. 48192. It has also been held that rice with the outer hull removed and rice with the outer hull on, subject to different rates of duty under the Tariff Act of 1913, may be segregated and each part assessed with the appropriate rate of duty. *Seaboard Rice Milling Co.* v. *United States*, 27 Treas. Dec. 314, T. D. 34843; *J. G. Martin, Jr.* v. *United States*, 32 Treas. Dec. 224, T. D. 37031

In *Frank P. Dow Co., Inc.* v. *United States*, 12 Cust. Ct. 156, C. D. 846, merchandise apparently similar to that involved herein was classified by the collector as rice bran. One witness testified that it consisted of rice bran, rice hulls, screenings, rice polish, and broken rice. However, the chief chemist testified that he had examined the sample and found the same to be rice bran, according to standard practice and authority. The court upheld the collector's decision, stating that the component material of chief value was not shown, but that the majority of the ingredients were *eo nomine* provided for in paragraph 727 at the same rate of duty as that assessed on rice bran.

In the instant case, different rates are provided in the tariff act, as amended, for the three component materials. The commingled merchandise has been separated and duty assessed at the rates applicable to the respective parts. On the record as presented, we hold that the merchandise is properly dutiable as assessed by the collector, upon the rice-bran content at five-eighths of 1 cent per pound under paragraph 727 of the Tariff Act of 1930; upon the rice-hull content at 5 cents per 100 pounds under paragraph 730, as amended by the trade agreement with Canada, T. D. 49752; and upon the broken-rice content at five-sixteenths of 1 cent per pound under paragraph 727, as amended by the trade agreement with the Netherlands, T. D. 48075. The protests are overruled and judgment will be rendered accordingly.